IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE NATIONAL STOCK EXCHANGE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06 C 1603 |
| | ) | |
| v. | ) | Judge Guzman |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff The National Stock
Exchange ("NSX") submits this memorandum in opposition to Defendant's motion for
summary judgment and in support of its own cross-motion for partial summary judgment
as to the issue of coverage under the insurance policy.

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.   The Insurance Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.   The SEC Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     C.   Dispute Over Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. SUMMARY JUDGMENT AND PRINCIPLES OF CONSTRUCTION FOR
     INSURANCE CONTRACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.   A Claim Arose in October 2003 or at the Latest by February 2004 . . 6

     B.   Precedent Supports Coverage of Defense Costs Incurred on behalf of
          Officers during the SEC Investigation . . . . . . . . . . . . . . . . . . . . . . 10

     C.   Federal's Interpretation of the Policy Is Improper . . . . . . . . . . . . . 14

     D.   Legal Fees Incurred Prior to the SEC's Order of February 5, 2004 or
          the May 19, 2005 Complaint Are a Covered Loss Under the Policy . 16

     E.   NSX Is Entitled to the Benefit of Its Bargain . . . . . . . . . . . . . . . . . 17

     F.   Federal's Patently Improper Interpretation of the Policy Has Resulted
          in Vexatious and Unreasonable Delay . . . . . . . . . . . . . . . . . . . . . . 19

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Center for Blood Research, Inc. v. Coregis Ins. Co.*, 305 F.3d 38 (1st Cir. 2002) . . . . . . 14

*Cincinnati Insurance Company v. Allen*, 347 F.Supp.2d 586 (C.D. Ill. 2004) . . . . . . . . . 1

*Genesis Ins. Co. v. FTD.COM, Inc.*, 2004 WL 1199984 (N.D. Ill., June 1, 2004) . . . . . 17

*Harleysville Lake States Ins. Co. v. Boller Constr. Co., Inc.*, 2005 WL 1323321 (N.D.Ill. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868 (7th Cir. 2000) . . . . . . . . . . . . 5

*LaSalle Nat'l Trust, N.A., U/T 116555 v. ECM Motor Co.*, 76 F.3d 140 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

*Liberty Mutual Insurance Co. v. Continental Casualty Co.*, 771 F.2d 579 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McCraven v. City of Chicago*, 109 F.Supp.2d 935 (N.D. Ill. 2000) . . . . . . . . . . . . . . . . 9

*Minuteman Intern., Inc. v. Great American Ins. Co.*, 2004 WL 603482 (N.D. Ill. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10-11

*Moore v. Lomas Mortgage USA, Inc.*, 796 F.Supp. 300 (N.D. Ill. 1992) . . . . . . . . . . . . 15

*Polychron v. Crum & Forster Insurance Companies*, 916 F.2d 461 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13, 17

*Richardson Electronics Ltd. v. Federal Insurance Company*, 120 F.Supp.2d 698 (N.D. Ill. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Safeway Stores, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Penn.*, 64 F.3d 1282 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*St. Paul Mercury Ins. Co. v. Foster*, 268 F.Supp.2d 1035 (C.D.Ill. 2003) . . . . . . . . . . 14

*Stamm v. Provident Life & Accident Ins. Co.*, 2000 WL 20713 (N.D.Ill. 2000) . . . . . . . 19

*State of New York v. Blank*, 745 F.Supp. 841 (N.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . 16

**State Cases**

*Foster v. Summit Medical Systems, Inc.*, 610 N.W. 2d 350 (Minn. App. 2000) . . . . . . . 6

*Grevas v. U.S. Fidelity and Guaranty Company*, 152 Ill.2d 407, 604 N.E.2d 942 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*JB Oxford Holdings v. Certain Underwriters at Lloyd's London*, 2001 WL 1190498 (Cal. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill.App.3d 743, 681 N.E.2d 552 (Ill. App. 1ˢᵗ Dist. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 607 N.E.2d 1204 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Traveler's Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 757 N.E.2d 481 (2001) . . . . . 6, 15

**Federal Rules and Regulations**

Fed.R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

17 C.F.R. § 2O2.5(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17 C.F.R. § 2O3.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17 C.F.R. § 2O1.100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**State Statutes**

215 I.L.C.S. 5/155 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

**Treatises**

Bailey, Dan. A., *D&O Policy Commentary*, 720 PLI/Lit 205 (February 2004) . . . . . . . 8-9

Paar, Randy, *Directors and Officers Insurance*, 865 PLI/Comm 9 (June 2004) . . . . . . . . 8

# I. INTRODUCTION

This case involves a dispute over insurance coverage for expenses related to a Securities and Exchange Commission ("SEC") investigation of NSX and its officers. NSX is a national stock exchange overseen and regulated by the SEC. NSX seeks to recover from Federal Insurance Company ("Federal") under a Directors and Officers ("D&O") insurance policy the legal fees and expenses NSX advanced for its current and former officers, including but not limited to David Colker, Jeffrey Brown, and Robert Ackermann, for the investigation and defense associated with the SEC investigation. NSX and Federal disagree as to the insurance policy's coverage for NSX's officers' legal fees related to the SEC investigation. The construction and interpretation of an insurance policy presents a question of law to be decided by the court; "a determination of the rights and obligations under an insurance policy is an appropriate subject for disposition as a matter of law." *Cincinnati Insurance Company v. Allen*, 347 F.Supp.2d 586 (C.D. Ill. 2004). Under the clear terms of the insurance policy at issue, the SEC proceeding constitutes a claim under the policy, and therefore, there is coverage for the officers' legal fees. A legal ruling on the issue of the Policy's coverage will materially advance the litigation and may promote a settlement of the case.[1]

---

[1] In this motion, NSX merely seeks a determination that the fees incurred on behalf of the officers are covered by the terms of the policy. NSX does not ask the Court to determine the particular amount due to NSX for defense costs expended on behalf of its officers, as this is a fact-based question not within the scope of the stipulated facts. Moreover, those issues would require discovery, which has not been undertaken in this case to date. NSX reserves its right to engage in full discovery related to all issues in this matter.

## II. FACTUAL BACKGROUND

**A.     The Insurance Policy**

Federal issued an Executive Liability and Indemnification Policy No. 70429056

(the "Policy") to NSX for the period from August 3, 2003 to August 3, 2004, and NSX

purchased an extended reporting period through August 3, 2005.  (Stipulated Facts ¶ 3,

Exh. 1)  The Policy defines "Claim" as:

> a.      a written demand for monetary damages,
>
> b.      a civil proceeding commenced by the service of a
>         complaint or similar pleading,
>
> c.      a criminal proceeding commenced by a return of an
>         indictment, or
>
> d.      a formal administrative or regulatory proceeding
>         commenced by the filing of a notice of charges, formal
>         investigative order or similar document,

against any **Insured Person** for a **Wrongful Act**, including any appeal
therefrom.

(Stipulated Facts ¶ 6, Exh. 1 at 9.)  Federal's Policy in subsection d specifically defines a

"Claim" as "a formal administrative or regulatory proceeding commenced by the filing of

a . . . formal investigative order or similar document."

The Policy defines "Insured Person" as any "past, present or future . . . officer

. . . ."  The Policy thus provides coverage to NSX's past and present officers.  (Stipulated

Facts ¶ 5, Exh. 1 at 9.)  The Policy defines "Loss" to include "Defense Costs," which are

defined as:

> **Defense Costs** means that part of **Loss** consisting of reasonable costs,
> charges, fees (including but not limited to attorneys' fees and experts'
> fees) and expenses (other than regular or overtime wages, salaries or fees
> of the directors, officers or employees of the **Organization**) incurred in
> defending or investigating **Claims** and the premium for appeal, attachment
> or similar bonds.

(Stipulated Facts ¶¶ 8-9, Exh. 1 at 11.)  Under the Policy, Defense Costs are the costs "incurred in defending or investigating" Claims.

The Policy's insuring agreement provides "Executive Indemnification Coverage" and obligates Federal to reimburse NSX for indemnifying the loss incurred by the directors and officers as follows:

> Insuring Clause 2
> Executive Indemnification Coverage
>
> 2.  The Company [Federal] shall pay on behalf of the **Organization** all **Loss** for which the **Organization** grants indemnification to each **Insured Person**, as permitted or required by law, which the **Insured Person** has become legally obligated to pay on account of any **Claim** first made against such **Insured Person** individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**.

(Stipulated Facts ¶ 4, Exh. 1 at 1.)

### B.     The SEC Investigation

As a national stock exchange, NSX is regulated by the SEC under the Securities and Exchange Act of 1934, 15 U.S.C. § 78f.  On October 16, 2003, the SEC's Office of Compliance Inspections and Examinations sent NSX a report, noting serious deficiencies with NSX's regulatory programs, including NSX's failure to enforce important rules. (Stipulated Facts ¶ 11, Exh. 2.)  The SEC requested a response to the inspection report and noted that the report had been referred to the Division of Enforcement.  On October 22, 2003, the SEC's Division of Enforcement notified NSX that it was conducting an investigation of NSX and requested documents from NSX and its officers.  (Stipulated Facts ¶ 12, Exh. 3.)  In its document request, the SEC defined NSX (formerly CSE)[2] as

---

[2]  NSX formerly was named the Cincinnati Stock Exchange.

including its "present and former directors, trustees, officers . . . ." (Stipulated Facts Exh.

3 at 3.) The document request included requests for all performance- and compensation-

related documents "for the current and former officers of the CSE and any management

level employees of the CSE having compliance, regulatory, or market surveillance

responsibilities," specifically including David Colker, Jeffrey T. Brown, and Robert

Ackermann, among others. (*Id.* at 7-8.)

On February 5, 2004, the SEC issued an order, entitled "Order Directing Private

Investigation and Designating Officers to Take Testimony," to determine whether NSX

"or any other persons" were engaged in certain violations of the Exchange Act or SEC

regulations. (Stipulated Facts ¶ 13, Exh. 4.) Shortly thereafter, on May 25, 2004, the

SEC followed its formal order of investigation with target letters to NSX and three

current or former NSX officers -- David Colker, Robert Ackermann, and Jeffrey T.

Brown. (Stipulated Facts ¶ 14, Exh. 5.) The SEC letters indicated that the Division of

Enforcement intended to recommend that the SEC take action against these individuals,

including actions in federal court for civil penalties. *Id.* The violations identified in these

letters to the individual officers are the same as the violations identified in the October

2003 report and notification of investigation and the February 2004 formal investigative

order.

Ultimately, the SEC investigation culminated in the filing on May 19, 2005 of an

enforcement action against NSX and an administrative enforcement proceeding and civil

action in this Court against NSX's President and CEO.[3] (Stipulated Facts ¶ 15-16, Exh.

---

[3] *Securities and Exchange Commission v. David Colker*, 05C 2977 (N.D. Ill. May 19, 2005) (Judge Bucklo).

6-7.)  On that same date, a consent order was entered which effectively settled the civil proceeding.

### C.    Dispute Over Coverage

Federal states that a Claim under the Policy did not arise until May 19, 2005 with the filing of the civil complaint in this Court against NSX's CEO.    (Defendant's Summary Judgment Memorandum at 2.)    NSX asserts that a claim arose with the commencement of the SEC's investigation in October 2003 or no later than by February 2004, with the issuance of the SEC's order of investigation.  By this motion, this Court is being asked to interpret the Policy's coverage for the Defense Costs paid by NSX on behalf of its officers related to the SEC investigation based on the Policy's language and relevant SEC documents.

## III.  SUMMARY JUDGMENT AND PRINCIPLES OF CONSTRUCTION FOR INSURANCE CONTRACT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000) (quoting Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "The interpretation of an insurance policy is a question of law that is an appropriate subject for disposition by way of summary judgment." *Jupiter Aluminum*, 225 F.3d at 873.

The Supreme Court of Illinois has explained the appropriate principles for interpreting an insurance contract as follows:

> In construing the language of the policy, the court's primary objective is
> to ascertain and give effect to the intent of the parties to the contract.  In

> order to ascertain the meaning of the policy's language and the parties'
> intent, the court must construe the policy as a whole and take into account
> the type of insurance purchased, the nature of the risks involved and the
> overall purpose of the contract. If the words of a policy are clear and
> unambiguous, a court must afford them their plain, ordinary, and popular
> meaning. Conversely, if the language of the policy is susceptible to more
> than one meaning, it is considered ambiguous and will be construed
> strictly against the insurer who drafted the policy and in favor of the
> insured.

*Traveler's Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 292-93, 757 N.E.2d 481, 491

(2001) (quotations omitted). Further, under Illinois law, a contract must be interpreted to

give effect to all terms of the contract. *LaSalle Nat'l Trust, N.A., U/T 116555 v. ECM*

*Motor Co.*, 76 F.3d 140, 144 (7th Cir. 1996).


## IV. ARGUMENT

### A.    A Claim Arose in October 2003 or at the Latest by February 2004

The definition of a "Claim" in subsection d of the Policy provides insurance

coverage for NSX's officers for the SEC investigation. The Policy defines a Claim as "a

formal administrative or regulatory proceeding commenced by the filing of a . . . formal

investigative order or similar document." It is beyond serious dispute that an SEC

investigation is an "administrative or regulatory proceeding." *See, e.g., Foster v. Summit*

*Medical Systems, Inc.*, 610 N.W. 2d 350, 354 (Minn. App. 2000) ("The parties agree that

the SEC investigation is an administrative proceeding . . ."); *Minuteman Intern., Inc. v.*

*Great American Ins. Co.*, 2004 WL 603482 at 4 (N.D. Ill., March 22, 2004) ("Defendant

[insurer] does not dispute that the SEC proceeding met the requirement of being . . . an

'administrative . . . proceeding'"). The SEC regulations cited by Federal in its attempt to

characterize SEC investigations as "non-proceedings" are simply inapplicable to this case because they would contradict the binding terms of the Policy.[4]

A Claim arose with the SEC's letter of October 22, 2003 stating that the SEC is "conducting an investigation" of NSX, an entity regulated by the SEC, which included its present and former officers. The October 22 letter made clear that for purposes of the investigation, NSX (formerly CSE) was defined to include "present and former directors, trustees, [and] officers." The letter further identified particular officers whose performance and compensation were being specifically investigated in connection with "compliance, regulatory, or market surveillance responsibilities," including David Colker, Jeffrey T. Brown, and Robert Ackermann, among others. Because NSX is a national securities exchange overseen and regulated by the SEC,[5] this letter declaring an investigation of NSX and its officers necessitated compliance with a very real SEC regulatory proceeding and is a "similar document" to a "formal investigative order" within the meaning of subsection d of the definition of a Claim. The letter of October 22

---

[4] In its memorandum in support of its motion for summary judgment, Federal apparently attempts to characterize SEC regulations as distinguishing between investigations and other administrative proceedings. (Defendant's Summary Judgment Memorandum at 7-8.) Undoubtedly, there are procedural differences between the SEC's handling of its investigations and its adjudications, but these differences cited by Federal are irrelevant to this case. Federal's attempts to read the word "administrative" as "adjudicative" in the definition of "Claim" under the Policy is inconsistent with the plain language of the Policy, which covers regulatory proceedings commenced by a "formal investigative order or similar document," as well as regulatory proceedings commenced by a notice of charges. This strained reading and attempt to inject a non-issue into the case underscore Federal's unreasonable interpretation of the Policy in an attempt to deny coverage.

Furthermore, even if the Policy itself did not demonstrate that investigations are covered claims, the SEC regulations cited by Federal do not create a distinction between investigations and "administrative proceedings" for the purposes of this case. *See* 17 C.F.R. § 202.5(b) (referring to "administrative proceedings looking to the imposition of remedial sanctions," apparently a subset of administrative proceedings, as an option for the agency following its investigation); 17 C.F.R. § 203.1 (distinguishing between "investigation" and "adjudicative" or "rulemaking" proceedings, not "administrative proceedings"); 17 C.F.R. § 201.100 (exempting investigatory proceedings from Rules of Practice where rules apply to administrative proceedings "unless otherwise provided").

[5] NSX is a national securities exchange registered with the SEC pursuant to Section 6(a) of the Securities Exchange Act of 1934. Under Section 21 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78u, the SEC has special investigatory powers to investigate violations, *inter alia*, of the rules of a national securities exchange.

followed the SEC's inspection report of October 16 noting "serious deficiencies" with NSX's regulatory programs. The letter of October 22 commenced an administrative or regulatory proceeding against NSX and its officers, and therefore a Claim arose under the Policy on October 22, 2003.

Even if the October 22, 2003 letter had not created a Claim, a Claim certainly arose by February 5, 2004 when the SEC issued a formal investigative order titled "Order Directing Private Investigation and Designating Officers to Take Testimony." The SEC's order of February 5 falls squarely within the Policy's definition of a Claim as "a formal administrative or regulatory proceeding commenced by the filing of a . . . formal investigative order or similar document." Subsection d of Federal's policy is expressly written to provide coverage for SEC investigations, especially where a formal order of investigation has issued.

Contrary to Federal's apparent assertion,[6] such coverage of regulatory investigations is common in D&O insurance policies. Legal treatises note that in D&O policies the term claim "can, and often is, defined to include investigations by the SEC and the Department of Justice." Paar, Randy, *Directors and Officers Insurance*, 865 PLI/Comm 9, 34-35 (June 2004). Federal's prior counsel has stated:

> Most D&O policies today define what is a Claim and when is the Claim first made for coverage purposes. Typically, the definition is quite broad, and includes written demands, civil or criminal proceedings and, with respect to D&O coverage only, administrative, regulatory or investigative proceedings. . . . Administrative, regulatory or investigative proceedings are usually defined to commence by the filing of a notice of charges, formal investigative order, target letter or similar document.

---

[6] *See* Defendant's Summary Judgment Memorandum at 7-9.

Bailey, Dan. A., *D&O Policy Commentary*, 720 PLI/Lit 205, 211 (February 2004).[7]

Federal has also taken the position that the SEC's order of February 5 does not name any NSX officers and so no claim arose. (Defendant's Summary Judgment Memorandum at 10). The SEC's order of February 5 states that "CSE" may have failed to perform certain acts, namely:

> A.    CSE may have failed to enforce compliance by its members with certain provisions of the Exchange Act, the rules and regulations thereunder, and CSE rules;
>
> B.    CSE may have failed to file with the Commission one or more proposed rule changes regarding (i) a stated policy, practice, or interpretation of the CSE and/or (ii) an interpretation of an existing rule of the CSE; and
>
> C.    CSE may have failed to maintain certain records as shall be made or received by CSE in the course of its business and in the conduct of its self-regulatory activity.

"CSE" was previously defined by the SEC in the October 22, 2003 document request as including "present and former directors, trustees, officers . . ." The SEC order itself states that "a private investigation be conducted to determine whether the **aforesaid persons, or any other persons** . . ." have engaged in the identified acts. (Emphasis added.) In addition, a corporation acts only through its officers or agents, creating potential liability for NSX's officers. *McCraven v. City of Chicago*, 109 F.Supp.2d 935, 946 (N.D. Ill. 2000) ("[A] corporation only acts through its officers, directors, and agents . . ."). The SEC's order of February 5 covers the current and former officers of NSX. The SEC order need not name the officers individually. The Policy at issue does not name the covered officers individually. The SEC's order of February 5 is a formal order

---

[7] Mr. Bailey wrote to NSX's counsel on March 17, 2004 "on behalf of Federal Insurance Company."

commencing an investigation of NSX and its officers; such an order meets the requirements of subsection d for the filing of a "formal investigative order" and thus creates a Claim under the Policy.

The SEC's formal order of February 5 was followed shortly thereafter with target letters on May 25, 2004 to three current or former NSX officers, David Colker, Jeffrey T. Brown, and Robert Ackermann, indicating that the Division of Enforcement intended to recommend that the SEC take action against these individuals. The issuance of these "Wells notices" on the heels of the formal investigative order underscores that the regulatory proceeding commenced by the filing of the order was against the officers themselves as well as NSX. Under the Policy, a Claim was commenced against NSX's officers on October 22, 2003. In the alternative, a Claim arose at least by February 5, 2004.

**B.** **Precedent Supports Coverage of Defense Costs Incurred on behalf of Officers during the SEC Investigation**

Two decisions of this Court have held under Illinois law that D&O policies provided coverage for the legal fees incurred in defense of an SEC investigation and a Department of Justice investigation. In *Minuteman International, Inc. v. Great American Insurance Co.*, 2004 WL 603482 (N.D. Ill. March 22, 2004), an SEC subpoena was held to constitute a claim under a D&O policy, and the court allowed a claim to proceed for reimbursement of attorneys' fees for officers during the SEC investigation. In that case, Minuteman International was investigated by the SEC, and the SEC issued an order directing a private investigation and subpoenas. The insurer refused to pay the legal fees for the SEC investigation, and the insurer moved to dismiss Minuteman's complaint. The issue was whether the SEC's investigative proceeding constituted a claim. The policy

defined claim as "a written demand for monetary or nonmonetary relief" or "an administrative . . . proceeding made against any Insured seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading . . . or the receipt or filing of notice of charges or similar document . . . ." It was undisputed that the SEC proceeding was an "administrative proceeding." *Id.* at *4. Significantly, this Court in *Minuteman* rejected the insurer's attempt to create a dichotomy between an enforcement proceeding seeking relief and the investigation leading up to a request for relief, even though the policy in that case, unlike the present Policy, did not explicitly refer to proceedings initiated by "formal investigative order or similar document." *Id.* at *5-7. The court denied the motion to dismiss and allowed a claim for the officers' attorney fees to proceed because the investigative proceedings constituted a Claim. *Id.* at *7. Once this Court interpreted the policy's coverage, the case settled approximately one month later.

Federal attempts to distinguish *Minuteman* on two faulty grounds. (Defendant's Summary Judgment Memorandum at 12-13.) First, although Federal claims that its Policy is more restrictive than that in *Minuteman*, the Federal Policy, unlike the *Minuteman* policy, does not require that regulatory proceedings seek "relief" but does explicitly provide coverage for proceedings commenced by a "formal investigative order or similar document." Second, Federal claims that there was no proceeding against an insured person, unlike in *Minuteman*; but, as explained *supra*, the facts in this case show that there was a proceeding against NSX's officers in the form of an investigation commenced by a "formal investigative order or similar document" as required by the Policy.

In *Richardson Electronics Ltd. v. Federal Insurance Company*, 120 F.Supp.2d 698 (N.D. Ill. 2000), this Court similarly ruled that a Justice Department antitrust investigation of the insured was covered under a D&O insurance policy issued by Federal. In that case, a criminal investigation was initiated by the Justice Department, which issued subpoenas for documents and testimony by various Richardson employees. Richardson notified Federal of its claim for the costs of legal representation in the investigation. As is the case here, Federal declined the claim on the ground that the investigation was not covered under the policy because it did not constitute a "claim." Because the court observed that the term "claim" was not defined in the policy, it adopted a dictionary definition to determine that the term "claim" means "a demand for something due or believed to be due." *Id*. at 701. The court ruled that the Justice Department investigation involved a claim because it required Richardson and its officials to comply with various demands for testimony and the production of documents. *Id*. Although the court held that Richardson was not entitled to coverage for other reasons, the opinion is instructive on the coverage issue before this Court.

Similar to the precedent in this Court, the Eighth Circuit in *Polychron v. Crum & Forster Insurance Companies*, 916 F.2d 461 (8th Cir. 1990), held that a grand jury investigation constituted a "claim" under a claims-made D&O insurance policy. In *Polychron*, a grand jury subpoena was served on a bank. The subpoena sought documents related to the time period when Mr. Polychron was the bank's president, and Mr. Polychron was subsequently questioned by a prosecutor and Internal Revenue Service officers. Mr. Polychron eventually was indicted, but was acquitted. As an insured under the policy at issue, Mr. Polychron sought reimbursement for his legal

expenses during the investigation phase. The policy did not define "claim," but the court indicated it meant "[t]o demand as one's own or as one's right; to assert; to urge; to insist," not just "[c]ause of action." *Id.* at 463 (quoting Black's Law Dictionary (5th ed. 1979)). Referring to the district court's use of "cause of action" as the definition, the Eighth Circuit held:

> [T]he term 'claim' has a broader definition. We believe that definition encompasses the first grand-jury investigation of Mr. Polychron. The function of a subpoena is to command a party to produce certain documents and therefore constitutes a 'claim' against a party. The subpoena, it is true, was directed to the bank, but the documents demanded (not merely requested, as defendants would have it) related to the plaintiff's conduct as a bank official. Further, the grand jury's investigation and the questioning by the Assistant United States Attorney amounted, as a practical matter, to an allegation of wrongdoing against Mr. Polychron, for which he prudently hired an attorney. The defendants' characterization of the grand-jury investigation as mere requests for information and an explanation underestimates the seriousness of such a probe. As later events proved, the plaintiff was the target of the investigation.

*Polychron*, 916 F.2d at 463. In each of these cases, the courts broadly interpreted "claim" under the relevant policies to include regulatory investigations, consistent with the rules of construction for insurance contracts. The Court in this case, however, need not apply a broad interpretation to find coverage because the Policy explicitly covers regulatory proceedings commenced by a "formal investigative order or similar document." Under the Policy, the October 22, 2003 investigation letter constitutes a "similar document" for coverage purposes, and a "formal investigative order" was received on February 5, 2004.

The cases offered by Federal for the proposition that SEC investigations do not support claims involved vastly different and more restrictive policy language than that at issue here; these cases do no more than demonstrate that courts interpret the applicable

language in policies when deciding coverage disputes. *See, e.g., JB Oxford Holdings v. Certain Underwriters at Lloyd's London*, 2001 WL 1190498 (Cal. App. 2001) (where policy defined "claim" as "any judicial or administrative proceeding [in which officers] may be subjected to a *binding adjudication of liability*," finding that response to subpoena in SEC investigation was not "adjudicative proceeding") (emphasis added)[8]; *St. Paul Mercury Ins. Co. v. Foster*, 268 F.Supp.2d 1035 (C.D.Ill. 2003) (where policy defined "claim" as "written demand against any insured for monetary damages or other relief," finding that private attorney's request for information from ESOP official was not demand for relief and distinguishing such request from more serious requests in agency investigations); *Center for Blood Research, Inc. v. Coregis Ins. Co.*, 305 F.3d 38 (1st Cir. 2002) (where policy defined "claim" as "any judicial or administrative proceeding in which any Insured(s) may be subjected to a *binding adjudication of liability*" and insured was not target of investigation, finding that assistant United States Attorney could not adjudicate and United States Attorney's investigative subpoena did not involve adjudication of liability) (emphasis added). These cases, with their very different policy language, are not applicable here and were not persuasive to this Court in *Minuteman*.

### C. Federal's Interpretation of the Policy Is Improper

Federal's interpretation of its Policy that a Claim was not made until May 19, 2005 renders subsection d of the definition of a Claim superfluous. Such an interpretation is contrary to basic principles of contract interpretation. Subsection b of the definition of a "Claim" already defines a "Claim" as "a civil proceeding commenced by the service of a complaint or similar pleading," which would apply to the filing of the

---

[8] Because *JB Oxford* is an unreported California case, this Court refused to even consider it in *Minuteman*, noting "California rules do not permit unpublished appellate court decisions to be considered, even for their persuasive value." 2004 WL 603482 at *5 n.2.

complaint on May 19, 2005. Federal's interpretation of its Policy frustrates the construction of subsection d of "Claim" and the expectation of coverage for SEC investigations where a "formal investigative order or similar document" issues. It is well-established under Illinois law that a contract must be interpreted to give effect to all terms of the contract. *LaSalle Nat'l Trust*, 76 F.3d at 144. If subsection d of the Policy is to be given any effect, it is triggered here where the SEC commenced a regulatory investigation in October 2003 and at the latest, issued a "formal investigative order" in February 2004. The formal investigative order, moreover, was followed some three months later with target letters from the SEC to three current or former NSX officers, David Colker, Jeffrey T. Brown, and Robert Ackermann, who were in fact being investigated under the order, a fact that Federal chooses to ignore. This Court should adopt an interpretation that gives effect and meaning to all the subsections defining a Claim. *See, e.g., Moore v. Lomas Mortgage USA, Inc.*, 796 F.Supp. 300, 305 (N.D. Ill. 1992) (preferring an interpretation which gives reasonable meaning to all contractual terms to an interpretation which makes some terms useless). To the extent that there may be any ambiguity in the Policy, ambiguities in insurance contracts are to be construed in favor of the insured and against the insurer. *See Traveler's Ins. Co.*, 197 Ill.2d at 293, 757 N.E.2d at 491. Thus, if the court concludes that the policy language relating to a "formal investigative order or similar document" is ambiguous, then that ambiguity must be construed in favor of coverage. Contrary to Federal's strained interpretation of the Policy, a Claim under the Policy arose well before May 19, 2005.

**D.     Legal Fees Incurred Prior to the SEC's Order of February 5, 2004 or the May 19, 2005 Complaint Are a Covered Loss Under the Policy**

Even if this Court were to find that a Claim did not arise until February 5, 2004 or May 19, 2005,[9] reasonable legal fees incurred prior to these dates are a covered loss under the Policy. The Policy defines "Defense Costs" as those costs incurred in connection with "defending or investigating" claims. The Policy provides specific coverage for investigating claims, and such coverage supports the interpretation that attorneys' fees incurred before a claim arose on either February 5, 2004 or May 19, 2005 are covered under the Policy if they are useful or reasonably related to defending against the Claim. *See, e.g., Liberty Mutual Insurance Co. v. Continental Casualty Co.*, 771 F.2d 579, 586 (1st Cir. 1985) ("pre-suit services were correctly considered as part and parcel of the defense against the liability suits"); *State of New York v. Blank*, 745 F.Supp. 841, 852 (N.D.N.Y. 1990). For example, in rejecting the insurer's argument that pre-complaint costs were not covered, the court in *Blank* held that the date of the filing of the suit was not determinative:

> Regardless of the date upon which the complaint was actually filed, [the insurer] has an obligation to reimburse [the insured] for all defense costs which he incurred for services rendered which are useful in defending against the first-party complaint. . . . . Common sense argues that [the insurer] is *benefited* by the early actions taken by [the insured] to defend this action and, thereby, ultimately reduce any potential assessment of damages.

745 F.Supp. at 852 (emphasis in original). Therefore, Federal was benefited by the legal services performed on behalf of NSX's officers following the October 22, 2003 letter, and has an obligation to reimburse NSX for those costs.

---

[9] Federal has taken the position that a claim only arose against NSX's CEO on May 19, 2005 and that Federal will not reimburse any costs or expenses incurred prior to May 19, 2005. (Answer ¶ 45.)

The Eighth Circuit has specifically rejected the argument advanced by Federal here. In holding that an insurer was liable for the legal fees incurred by an insured bank officer during a grand jury investigation, the Eighth Circuit wrote:

> the District Court found that [the officer's] legal fees prior to his indictment did not constitute a covered "loss" under the policy. We disagree. [The officer] hired an attorney to aid in his defense as the target of a grand-jury investigation. Thus, the fees charged by the attorney were reasonably incurred in "defense of . . . claims" under the loss provision of the policy.

*Polychron*, 916 F.2d at 463. Moreover, legal fees are recoverable under a D&O policy even if the services rendered were also useful in the defense of an uninsured corporation. *See Safeway Stores, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Penn.*, 64 F.3d 1282, 1289 (9th Cir. 1995) (holding that "[d]efense costs are...covered by a D&O policy if they are reasonably related to the defense of the insured directors and officers, even though they may also have been useful in defense of the uninsured corporation").

Here, there is no legal basis for Federal's assertion that there is no coverage for reasonable legal fees incurred prior to May 19, 2005. Federal does not dispute that a Claim arose under the Policy, but asserts that a claim only arose on May 19, 2005 and that only legal fees after May 19 are recoverable. This interpretation is not founded on any Policy language. Federal was benefited by the early actions taken by NSX's officers, not just its CEO, to defend against the SEC investigation. There is no reason to give the insurer free of charge the benefit of the pre-May 19 legal services which ended the matter and drastically reduced post-May 19 legal fees.

### E. NSX Is Entitled to the Benefit of Its Bargain.

Illinois law mandates that "an insurance contract should be construed liberally in favor of the insured and strictly against the insurer." *Grevas v. U.S. Fidelity and*

*Guaranty Company*, 152 Ill.2d 407, 410, 604 N.E.2d 942, 944 (1992); *see also Genesis Ins. Co. v. FTD.COM, Inc.*, 2004 WL 1199984 at 3 (N.D. Ill. 2004) (Guzman, J.) (terms of insurance contract susceptible to more than one meaning will be construed strictly against insurers who drafted policy). Under this guideline, the definition of "Claim" should be construed in favor of NSX. As stated by the Illinois Supreme Court in *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 108-09, 607 N.E.2d 1204, 1212 (1992), in interpreting an insurance policy, the court must ascertain the intent of the parties to the contract, construing the policy as a whole with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract. In light of those principles, the policy should be interpreted in favor of NSX.

The intent of the parties is evidenced by the fact that Federal insured NSX -- a national stock exchange regulated by the SEC. The SEC has broad investigative and regulatory powers. The purpose of the insurance Policy was to protect NSX's officers and directors against the legal expenses entailed in defending themselves against any investigation or suit charging wrongdoing, particularly by the SEC -- NSX's primary regulator. That particular risk was specifically undertaken by Federal in no uncertain terms by its coverage of "Defense Costs." Protection against that risk is what NSX's officers expected and what NSX bargained and paid for. That protection should not be lost simply because Federal elects an unreasonably restrictive reading of its Policy. Federal's interpretation of its Policy eliminates any coverage because the attorneys' fees in defending NSX's present and former officers during the SEC investigation predictably were almost all incurred prior to May 19, 2005. Under Federal's interpretation of its Policy, it would owe nothing to NSX for the officers' legal fees because the Policy's

$100,000 deductible exceeds any post-May 19 attorneys' fees. NSX should not be deprived of coverage in this case and Federal should not be allowed to defeat the purpose of the contract by its restrictive interpretation of its Policy.

**F.     Federal's Patently Improper Interpretation of the Policy Has Resulted in Vexatious and Unreasonable Delay.**

Federal has attempted to argue both before and during this action that an SEC investigation is not a regulatory proceeding covered under the Policy, despite the specific reference in the Policy to a "formal investigative order or similar document" commencing such a regulatory proceeding. Federal also argues that the officers of NSX were not the targets of the formal investigation ordered by the SEC, despite their being investigated and identified as targets of the investigation or regulatory proceeding commenced by a "formal order or similar document." As a result of Federal's patently unreasonable interpretation of the Policy, Federal has refused to make *any* payment due under the Policy in relation to the officers' defense of the formal SEC investigation. The effort to inject the non-issue of "adjudicative proceedings," nowhere mentioned in the Policy, and to dodge the critical Policy language in its motion lends support to the claim that Federal has vexatiously and unreasonably delayed settlement and payment of insurance proceeds under 215 I.L.C.S. 5/155.

"[Section 155] relief may be appropriate if [the insurer's] failure to settle the underlying claim was due to an unreasonable and vexatious interpretation of the insurance policy, rather than a 'bona fide dispute . . . regarding the scope of the insurance coverage.'" *Harleysville Lake States Ins. Co. v. Boller Constr. Co., Inc.*, 2005 WL 1323321, *3 (N.D.Ill. 2005) (quoting *Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill.App.3d 743, 681 N.E.2d 552, 558 (Ill. App. 1st Dist. 1997)); *see also Stamm v.*

*Provident Life & Accident Ins. Co.*, 2000 WL 20713, *5 (N.D.Ill. 2000) (awarding attorney fees under section 155 where insurer's interpretation of policy was clearly inconsistent with terms of policy). In light of Federal's ongoing and patently improper interpretation of the Policy language, denying any coverage where defense costs of NSX's officers are clearly owed in some amount under the Policy, this Court should find Federal's denial vexatious and unreasonable under section 155.

While summary judgment for NSX on this issue would be appropriate, however, the Court need not decide the section 155 claim at present in order to find that NSX is entitled to partial summary judgment on the separate issue of coverage of NSX's officers under the Policy. *See Mobil Oil Corp.*, 288 Ill.App.3d at 752, 681 N.E.2d at 558 (noting that question of whether insurer's actions are unreasonable and vexatious is determined based upon totality of circumstances).

## V. CONCLUSION

For the foregoing reasons, The National Stock Exchange respectfully moves this Court, pursuant to Rule 56, to render partial summary judgment and interpret the Policy and declare (i) that a claim arose on October 22, 2003, or alternatively by February 5, 2004, (ii) that NSX is entitled to be reimbursed under the Policy for the reasonable attorney fees incurred on behalf of its current and former officers prior to May 19, 2005

as a result of the SEC investigation, and (iii) that Federal has vexatiously and

unreasonably delayed settlement and payment under the Policy.


August 16, 2006             THE NATIONAL STOCK EXCHANGE


By:  <u>s/Suzanne J. Prysak</u>

        One of Its Attorneys


J. Kevin McCall
Suzanne J. Prysak
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
Phone: (312) 222-9350
Fax:    (312) 527-0484


OF COUNSEL:


John J. McCoy
Theresa H. Vella
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Phone: (513) 381-2838
Fax:    (513) 381-0205