IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE NATIONAL STOCK EXCHANGE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Judge Ronald A. Guzmán ) ) |
| FEDERAL INSURANCE COMPANY, | ) 06 C 1603 ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In this diversity case, National Stock Exchange ("NSX") has sued Federal Insurance Co. for declaratory judgment, breach of contract and statutory interest and penalties. Before the Court are Federal Insurance Co.'s motion for summary judgment and NSX's cross-motion for partial summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, the Court grants in part and denies in part the motions.

## FACTS[1]

In August 2003, plaintiff purchased an insurance policy from Federal Insurance Co. (Stipulated Stmt. ¶ 3.) The insurance policy included an executive indemnity provision, which provided plaintiff with coverage for any "Loss" it incurred from indemnifying its past, present or future directors or officers who had become legally obligated to pay on account of any "Claim" made against them. (Id. ¶ 4.)

---
[1]Unless otherwise noted, the following facts are taken from the Stipulated Statement of Undisputed Facts ("Stipulated Statement").

Under the policy, "Loss means the total amount which any Insured Person becomes legally obligated to pay on account of each Claim . . . made against them for Wrongful Acts for which coverage applies . . . ." (*Id.* ¶ 8.) The policy defines "Loss" to include defense costs, such as attorneys' fees and expenses, incurred while "defending or investigating Claims." (*Id.* ¶¶ 8, 9.) The term "Insured Person" includes "any past, present or future duly elected director or duly elected or appointed officer of the Organization." (*Id.* ¶ 5.) "Wrongful Act means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by an Insured Person . . . ." (*Id.* ¶ 7.) The policy defines "Claim" as a: "written demand for monetary damages, a civil proceeding commenced by the service of a complaint or similar pleading, a criminal proceeding commenced by a return of an indictment, or a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document." (*Id.* ¶ 6; *id.*, Ex. 1, Decls. Executive Liability & Indem. Policy ¶ 27.)

On October 16, 2003, plaintiff received a letter and an inspection report from the Securities and Exchange Commission's ("SEC") Office of Compliance Inspections and Examinations. (Stipulated Stmt. ¶ 11.) The letter informed plaintiff that it had referred the inspection report concerning plaintiff's regulatory programs for equity trading to the SEC's Division of Enforcement. (*Id.*) On October 22, 2003, the SEC's Division of Enforcement sent plaintiff a document request along with a letter stating that it was conducting an investigation and was requesting documents from plaintiff. (*Id.* ¶ 12.)

2

On February 5, 2004, the SEC then issued an "Order Directing Private Investigation and Designating Officers to Take Testimony." (*Id.* ¶ 13.)

On May 25, 2004, the SEC sent "Wells Notices" to plaintiff's counsel and counsel for three current or former officers of plaintiff—David Colker, Jeffrey T. Brown, and Robert P. Ackerman. (*Id.* ¶ 14.) The notices advised the parties that the SEC staff was recommending that the Commission institute further proceedings against plaintiff and plaintiff's officers. (*Id.*)

On May 19, 2005, the SEC issued an order to institute administrative and cease-and-desist proceedings against plaintiff, and an administrative proceeding against plaintiff's officer, David Colker. (*Id.* ¶ 15.) That same day, the SEC filed a complaint in federal court against Colker. (*Id.* ¶ 16.) As a result of the actions taken by the SEC, plaintiff's past and present officers incurred legal fees which plaintiff asserts it paid on their behalf. (*Id.* ¶ 17.)

In Count I of the Complaint, plaintiff seeks a declaration that defendant is obligated to pay under the policy for losses plaintiff incurred on behalf of its officers pursuant to the SEC investigation beginning October 22, 2003, or at least by February 5, 2004. (*See* Compl. ¶ 58; Pl.'s Mem. Opp'n Mot. Summ. J. 6.) In Count II, plaintiff sues defendant for breach of contract based on defendant's failure to pay monies owing under the policy. In Count III, plaintiff claims that it is entitled to statutory interest on the monies owed by defendant. In Count IV, plaintiff seeks statutory penalties based on defendant's alleged vexatious and unreasonable delay. Defendant contends that under the terms of the policy, a valid "Claim" did not exist until May 19, 2005, when

3

the SEC instituted an administrative proceeding and filed a complaint against plaintiff's officer, David Colker.

Defendant has moved for summary judgment as to all counts. Plaintiff has cross-moved for summary judgment only as to Counts I and IV.

## DISCUSSION

A court will grant a summary judgment motion "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. At this stage, the court does not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court views all evidence and draws all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. (*Id.*)

### I. Count I: Declaratory Judgment

Plaintiff alleges that defendant breached the terms of its insurance policy by failing to provide coverage to plaintiff for losses stemming from an SEC investigation and seeks a declaration that plaintiff is entitled to defense costs incurred on behalf of its officers dating back to October 2003, or at the latest February 2004. (Compl. ¶¶ 58,

62; Pl.'s Mem. Opp'n Summ. J. 5.) Defendant contends that the policy requires it to provide coverage only as of May 19, 2005 because a valid "Claim . . . against any Insured Person for a Wrongful Act" did not exist until that date.[2] (Def.'s Mem. Supp. Summ. J. 15.)

"The interpretation of an insurance policy is a question of law that is an appropriate subject for disposition by way of summary judgment." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000); *see River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998). Under Illinois law, courts must adopt an interpretation of the policy that gives effect to all terms included in the policy in light of their ordinary meanings. *La Salle Nat'l Trust v. ECM Motor Co.*, 76 F.3d 140, 144 (7th Cir. 1996). When construing the language of an insurance policy, the court's primary objective is to ascertain the intent of the parties, taking into account the type of insurance purchased, the risk undertaken, the subject matter insured, and the policy's purpose as a whole. *Employers Ins. of Wausau v. James McHugh Constr. Co.*, 144 F.3d 1097, 1104 (7th Cir. 1998); *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 491 (Ill. 2001). When the language of a policy is unambiguous, courts should ascertain the intent of the parties solely from the language of the policy. *La Salle Nat'l Trust*, 76 F.3d at 144. However, where the language of a policy is susceptible to more than one reasonable meaning, it is considered ambiguous and the policy language must be

---

[2] Plaintiff argues that under defendant's interpretation of the policy, defendant would owe nothing to plaintiff for legal fees incurred on behalf of its officers because the policy's $100,000.00 deductible exceeds any attorneys' fees incurred after May 19, 2005. (Pl.'s Mem. Opp'n Summ. J. 19.)

interpreted against the insurer who drafted the policy. *River*, 160 F.3d at 1169; *Travelers Ins. Co.*, 757 N.E.2d at 292-93.

For the reasons given below, we find that the language of the policy is unambiguous and that the intent of the parties was to include attorneys fees and costs of defending a formal investigation of The National Stock Exchange or its officers or directors by the Securities and Exchange Commission regarding alleged errors, misstatements, misleading statements, acts, omissions, neglect, or breaches of duty.

Defendant first argues that the definition of "Claim" under the insurance policy does not include an SEC investigation and, therefore, plaintiff did not have a valid claim under the policy until May 19, 2005, the date on which the SEC issued an order instituting administrative proceedings against plaintiff's officer, David Colker. Plaintiff argues that the clear language of the policy defines "Claim" to include SEC investigations commenced by a formal order of investigation, which the SEC issued to plaintiff on February 5, 2004.

The Court agrees with plaintiff. The language of the policy defines "Claim" as "a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, *formal investigative order*, or similar document." (Stipulated Stmt. ¶ 6) (emphasis added). The Court must give effect and meaning to every term included in the insurance policy. *La Salle Nat'l Trust*, 76 F.3d at 144; *Moore v. Lomas Mortgage USA, Inc.*, 796 F. Supp. 300, 305 (N.D. Ill. 1992) (preferring interpretations that give meaning to all contractual terms over those that render some terms meaningless). It is clear from this language that a formal investigation was intended to be included in the

definition of "Claim." If a formal investigative order did not commence a formal administrative or regulatory proceeding, then the term "formal investigative order" as used in the policy, would have no meaning. Thus, a formal investigation must be deemed to qualify as a formal administrative or regulatory proceeding and, therefore, as a "Claim" as defined by the contract language. It is undisputed that on February 5, 2004 the SEC issued an order directing a private investigation and designating officers to take testimony. If this order initiated a formal SEC investigation, then attorney's fees and costs of defending such an investigation would constitute a loss in defending a claim as defined by the policy.[3] In that regard, SEC regulations provide that "[t]he Commission may, in its discretion, make such formal investigations and authorize the use of process as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws ...." 17 C.F.R. § 202.5. Furthermore, a formal examination is to be nonpublic unless otherwise specifically ordered by the Commission. (*Id.*) 17 C.F.R. § 203.4 further provides that SEC proceedings commenced by a commission order in which witnesses are sworn are deemed to be formal investigative proceedings and that officers may be designated to take testimony and receive evidence in formal investigative proceedings. It is clear from the record, therefore, that the order of February 5, 2004, which designated several SEC officers to conduct a private investigation and empowered them "to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, [and] require the production of any books, papers, correspondence,

---

[3] Witnesses at such proceedings may be accompanied, represented and advised by counsel. The witnesses shall be sequestered. 17 CFR § 203.7.

memoranda or other records deemed relevant to the inquiry," (Stipulated Stmt., Ex. 4, Order Directing Private Investigation & Designating Officers Take Testimony.) was intended to and did in fact commence a formal investigation. It has been held that "A Commission order of investigation is the only administrative requirement for the commencement of formal investigative proceedings." See, e.g., SEC v. Blackfoot Bituminous, Inc., 622 F.2d 512, 514 (10th Cir. 1980). The Court has no difficulty concluding that the policy language "formal investigative order or similar document" includes an SEC order which commences a "formal investigative proceeding". Therefore, the letter of February 5, 2004 commenced a "Claim", i.e., a formal administrative or regulatory proceeding as contemplated by the plain language of the policy.

Defendant argues that the SEC defines investigations differently than administrative proceedings. As defendant concedes, however, courts must enforce definitions of terms as stated in the policy. (Def.'s Reply Supp. Summ. J. 9.) It is the policy's definitions that control the obligations of the parties and if those definitions are unambiguous, then the court need look no further. As pointed out above, the policy defines the term "Claim" as "a formal administrative or regulatory proceeding commenced by the filing of a . . . formal investigative order."[4] (Stipulated Stmt., Ex. 1, Decls. Executive Liability & Indem. Policy ¶ 27.) If defendant did not wish to include

---

[4] It is also worth noting that the policy defines "Claim" to include formal administrative or regulatory proceedings. Although defendant argues that the SEC defines investigatory proceedings differently than administrative proceedings, it does not address why SEC investigations are not part of formal regulatory proceedings.

SEC investigations, defendant, as drafter of the policy, could have omitted the phrase "commenced by the filing of a . . . formal investigative order, or similar document" from the policy. See *Citizens Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1109 (7th Cir. 2000). Defendant included the phrase in its definition of a "Claim," and therefore, the Court must give it effect.

However, defendant argues that even if the February 5, 2004 Order were deemed a formal investigatory order, a "Claim" did not yet exist. Defendant argues that the order was not "against an Insured Person for a Wrongful Act" as required by the definition of "Claim" in the policy because the February 5, 2004 Order was against plaintiff, not any of plaintiff's officers and until the SEC filed a complaint against plaintiff on May 19, 2005, the SEC had not alleged a "Wrongful Act."

To defendant's "Insured Person" argument, plaintiff responds that a previous letter issued by the SEC defined the scope of its investigation to include all of plaintiff's present and former officers and directors, and thus the formal investigation as to violations of the Securities Exchange Act was commenced "against an Insured Person." Again, the Court agrees with plaintiff. On October 22, 2003, the SEC's Division of Enforcement sent a letter to plaintiff to inform it that the Division was conducting an investigation of the "Cincinnati Stock Exchange" ("CSE"), plaintiff's former name.[5] (Stipulated Stmt. ¶ 12.) The letter advised plaintiff to take note of the definitions contained in an attachment to the letter. (*To.*, Ex. 3, Letter from E. Pedrosa to J. Brown of 10/22/03.) The attachment defined CSE to include present and former officers and

---

[5] In October 2003, after plaintiff purchased the insurance policy from defendant, plaintiff changed its name from Cincinnati Stock Exchange to National Stock Exchange. (Stipulated Stmt. ¶¶ 1, 3.)

9

directors. (*Id.*) Moreover, the February 5, 2004 formal investigative order stated that a private investigation would be conducted to determine whether CSE, NSX, "or any other persons" have engaged in the alleged securities violations. (*Id.*, Ex. 4, Order Directing Private Investigation & Designating Officers Take Testimony.) Further, the October 22, 2003 letter and the February 5, 2004 Order reference the same SEC case number, H0-9785. (*Compare id., with id.*, Ex. 3, Letter from E. Pedrosa to J. Brown of 10/22/03.)

Contrary to defendant's assertions, the policy does not require the SEC to name specific individuals as the target of its proceedings. Rather, the policy states that defendant must provide coverage for a Claim made "against *any* Insured Person." (Stipulated Stmt., Ex. 1, Decls. Executive Liability & Indem. Policy ¶ 27.) The policy defines "Insured Person" to include *any* past, present or future director or officer. (Stipulated Stmt. ¶ 5.) Given the SEC's previously defined scope of investigation that included plaintiff's officers and directors, the SEC's formal investigation of "CSE," initiated on February 5, 2004, included an investigation of its past and present officers and directors and thus, falls within the plain language of the policy.

Defendant fares no better with its "Wrongful Act" argument. Defendant appears to argue that the formal investigative order did not allege any wrongful act because it only stated that the SEC had information tending to show that CSE *may* have committed securities violations. The policy defines "Wrongful Act" as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or *allegedly committed or attempted*, by an Insured Person." (*Id.* ¶ 7; *id.*, Ex. 1, Decls. Executive Liability & Indem. Policy ¶ 27.) The SEC stated in

10

its February 5, 2004 formal investigative order that it had information that certain acts, practices, or courses of business of CSE, which, as discussed above, included its present and former officers, were "in possible violation of Sections 17(a), 19(b), 19(g) of the Exchange Act and Rules 17a-1 and 19b-4 thereunder." (*Id.*, Ex. 4, Order Directing Private Investigation & Designating Officers Take Testimony.) In particular, the order alleged that: (1) "CSE may have failed to enforce compliance by its members with certain provisions of the Exchange Act, the rules and regulations thereunder, and CSE rules;" (2) "CSE may have failed to file with the Commission one or more proposed rule changes regarding (i) a stated policy, practice, or interpretation of the CSE and/or (ii) an interpretation of an existing rule of the CSE;" and (3) "CSE may have failed to maintain certain records as shall be made or received by CSE in the course of its business and in the conduct of its self-regulatory activity." (*Id.*)

Because the term "Wrongful Act" as defined in the policy includes acts allegedly committed or attempted, the scope of the term necessarily includes acts that *may have been* committed. As discussed above, the term "Claim" includes formal investigation proceedings commenced by the February 5, 2004 formal investigative order. Thus, each act or omission alleged in that order is a "Wrongful Act."

In sum, defendant cannot escape liability by arguing that the SEC's "Claim" was not initiated "against any Insured Person for a Wrongful Act." Plaintiff incurred expenses on behalf of its officers and directors when investigating the matter after the "Claim" commenced, and under the terms of the policy, defendant must reimburse plaintiff for such expenses.

11

In ruling in plaintiff's favor, however, the Court holds that defendant is only liable for costs plaintiff incurred on behalf of its officers and directors after receiving the February 5, 2004 formal investigative order. While the policy states that formal administrative or regulatory proceedings can be commenced by "a notice of charges, formal investigative order or similar document," the SEC letter to plaintiff, dated October 22, 2003, did not constitute a document similar to a formal investigative order. A formal investigative order, by definition, includes an element of formality, and authorizes SEC officers to subpoena witnesses, administer oaths, and take evidence, among other powers. 17 C.F.R. §§ 202.5(a), 203.4, 203.7. Prior to the issuance of a formal investigative order, an SEC investigation is considered preliminary, and no process is issued or testimony compelled. 17 C.F.R. § 202.5(a) ("In such preliminary investigation no process is issued or testimony compelled."). The SEC's October 22, 2003 letter, informing plaintiff of the preliminary investigation, is therefore not similar to the February 4, 2005 formal investigative order that authorized named SEC officers to subpoena witnesses, administer oaths, and take evidence. (*Compare* Stipulated Stmt., Ex. 3, Letter from E. Pedrosa to J. Brown of 10/22/03, *with id.*, Ex. 4, Order Directing Private Investigation & Designating Officers Take Testimony.)

Plaintiff argues that even if the October 22, 2003 letter did not commence a "Claim," the policy language supports the interpretation that attorneys' fees incurred after the issuance of that letter but before a "Claim" arose are covered under the policy as "Defense Costs" because the legal services were useful to defendant and reasonably related to defending against the Claim. (Pl.'s Mem. Opp'n Summ. J. 16.)

12

The Court disagrees and holds that plaintiff's interpretation contradicts the plain language of the policy. If the parties intended to define "Defense Costs" as including costs incurred in defending or investigating *potential* claims, they should have stated as such. However, the policy unambiguously defines "Defense Costs" as fees and expenses incurred "in defending or investigating Claims." (Stipulated Stmt. ¶ 9.) Common sense dictates that a Claim must first exist in order for plaintiff to defend or investigate it. Having already determined that the Claim commenced as of February 5, 2004 via the SEC's formal investigative order, plaintiff cannot recover for expenses incurred on behalf of insured persons before the Claim existed.

Therefore, having considered the arguments raised by both parties, this Court grants in part and denies in part defendant's motion for summary judgment as to Count I, grants in part and denies in part plaintiff's motion for partial summary judgment as to that count and declares that a claim as defined by the policy commenced on February 5, 2004 and that defendant is obligated to pay plaintiff for the loss incurred by plaintiff on behalf of the insured persons after the claim commenced.

## II. Counts II and III:  Breach of Contract and Statutory Interest Claims

Defendant moves for summary judgment as to Counts II and III but provides no argument as to the merits of Counts II and III other than those raised with regard to Count I. Because the Court declares that defendant is liable for losses incurred by plaintiff on behalf of its officers and directors as of February 5, 2004, defendant has not shown that there is no genuine issue as to any material fact with regard to the claims in

13

Counts II and III. Accordingly, the Court denies defendant's motion for summary judgment as to those counts.[6]

## III. Count IV: Statutory Penalties for Vexatious and Unreasonable Delay

The parties cross-move for summary judgment as to Count IV and dispute whether defendant's delay in payment of insurance proceeds was "vexatious and unreasonable" under 215 Ill. Comp. Stat. 5/155 ("Section 155"). Section 155 provides that in the event of an insurer's vexatious and unreasonable denial of or delay in payment of insurance proceeds, a court may allow a plaintiff to recover reasonable attorneys' fees as well as a statutory amount as determined by the court. *Id.*; *see Richardson v. Ill. Power Co.*, 577 N.E.2d 823, 825-26 (Ill. App. Ct. 1991) (stating that Section 155 is "intended to provide a remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits"). Although the issue of whether an insurer's conduct is vexatious and unreasonable is a factual one, the final evaluation of an insurer's conduct is properly made by the court. *Horning Wire Corp. v. Home Indem. Co.*, 8 F.3d 587, 590 (7th Cir. 1993) (citing language of Section 155, which states that fees may be awarded "when it appears *to the court* that such . . . delay is vexatious and unreasonable," to deny plaintiff's argument that a jury should evaluate insurer's conduct); *Sports Arena Mgmt., Inc. v. Great Am. Ins. Group*, No. 06

---

[6] Plaintiff has not moved for summary judgment on the breach of contract and statutory interest claims. At this stage in the proceedings, plaintiff only seeks a determination that the fees incurred on behalf of its officers are covered by the terms of the policy. (Pl.'s Mem. Opp'n Summ. J. 1.)

C 0788, 2007 WL 684003, at *4 (N.D. Ill. Mar. 1, 2007) (disagreeing with plaintiff that Section 155 claims are not appropriate for summary judgment).

A wrongful denial of coverage, by itself, is not enough to trigger Section 155. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000); *see Knoll Pharm. Co. v. Auto. Ins. Co.*, 210 F. Supp. 2d 1017, 1028 (N.D. Ill. 2002). Because Section 155 is penal in nature, its provisions must be strictly construed. *Citizens First Nat'l Bank*, 200 F.3d at 1110. As the Seventh Circuit stated in *Citizens First National Bank*, an insurer's conduct does not constitute "vexatious and unreasonable delay" if there is a *bona fide* dispute concerning the scope or application of the coverage; the insurer asserts a legitimate policy defense; the claim presents a genuine issue of law or fact; or the insurer takes a reasonable legal position regarding an unsettled legal issue. *Id.* Only when an insurer's interpretation of an insurance policy is baseless, or clearly inconsistent with the terms of the policy, is the insured entitled to relief under Section 155. *Stamm v. Provident Life & Accident Ins. Co.*, No. 96 C 3311, 2000 WL 20713, at *5 (N.D. Ill. Jan. 7, 2000); *Morris v. Auto-Owners Ins. Co.*, 606 N.E.2d 1299, 1305 (Ill. App. Ct. 1993).

Although the Court ultimately adopted plaintiff's interpretation of the insurance policy's coverage, the Court cannot say that defendant's interpretation was baseless. An insurer's assertion of a plausible, although unsuccessful, defense to providing coverage does not constitute unreasonable or vexatious conduct. *State Farm Fire & Cas. Ins. Co. v. Miceli*, 518 N.E.2d 357, 363 (Ill. App. Ct. 1987); *see Citizens First Nat'l Bank*, 200 F.3d at 1110 (holding that insurer's argument that customer letters did not

15

constitute claims under the policy, although weak, was "presented with reasoned support" and thus did not constitute vexatious and unreasonable conduct); *Rozenfeld v. Med. Protective Co.*, 73 F.3d 154, 158 (7th Cir. 1996) (holding that if an insurance company's position for denying insurance proceeds is "at least arguable," then no inference of unreasonableness in raising the argument can be drawn).

In *United States v. Wapinski Real Estate*, the court denied plaintiff's claim under Section 155 after finding that the insurer's interpretation of the policy language, although erroneous, was nevertheless legitimate. No. 99 C 100, 2000 WL 284299, at *3 (N.D. Ill. Mar. 6, 2000). The policy provided that the insurer incurred a duty to defend the insured for any claim arising from a "bodily injury." *United States v. Wapinski Real Estate*, No. 99 C 100, 2000 WL 28271, at *2 (N.D. Ill. Jan. 10, 2000). The policy defined bodily injury as "a physical injury, including any resulting sickness or disease to a person." *Id.* The insurer argued, among other things, that the policy language did not include coverage for physical injuries arising from an emotional injury unless there was initial physical contact, and that the injuries did not arise from an "occurrence" as defined by the policy. *Id.* at *8-9. The court found this interpretation erroneous and against the clear language of the policy. *Wapinski*, 2000 WL 284299, at *3. Nevertheless, it held that the interpretation was "at least arguable," and thus did not fall within the scope of Section 155. *Id.*

Similarly, here, the parties disagree about the interpretation of terms in an insurance policy. Defendant asserted plausible, though erroneous, arguments as to why the SEC investigation did not constitute a "Claim . . . against an Insured Person for

16

a Wrongful Act." Therefore, the Court grants defendant's motion for summary judgment on plaintiff's claim under Section 155, and thereby denies plaintiff's motion for summary judgment as to that count.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendant's motion for summary judgment and plaintiff's cross-motion for partial summary judgment [doc. nos. 19, 25]. The Court: (1) grants in part and denies in part defendant's motion for summary judgment and grants in part and denies in part plaintiff's cross-motion for partial summary judgment as to Count I and declares that defendant is obligated to pay and declares that a claim as defined by the policy commenced on February 5, 2004 and that defendant is obligated to pay plaintiff for the loss incurred by plaintiff on behalf of the insured persons after the claim commenced; (2) denies defendant's motion as to Counts II and III; and (3) grants defendant's summary judgment motion and denies plaintiff's cross-motion as to Count IV, which is dismissed with prejudice.

SO ORDERED        ENTERED: 3/30/07

HON. RONALD A. GUZMAN
United States Judge